## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JANET MARCELIN,**

     **Plaintiff,**

**v.**                                          **Case No. 8:04-CV-491-T-17MAP**

**ECKERD CORPORATION OF**
**FLORIDA, INC., a Florida**
**corporation,**

     **Defendant.**

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, J.

THIS CAUSE is before the Court on Defendant, Eckerd Corporation of Florida, Inc.'s, Motion for Summary Judgment (Dkt. 15) and Eckerd's Memorandum of Law in Support of its Motion for Summary Judgment (Dkt. 16), filed on June 30, 2005, and Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment (Dkt. 21). filed by Plaintiff, Janet Marcelin, on August 16, 2005. Having heard oral argument of counsel on February 21, 2006, and after considering the Motion, record, and applicable law, the Defendant's Motion is granted for the reasons set forth below.

### STANDARD OF REVIEW

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material facts and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of proving that

no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Issues of fact are genuine "only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that would affect the outcome of the trial. *Id.* at 248.

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Evans v. Meadow Steel Products, Inc.,* 579 F.Supp. 1391, 1394 (N.D.Ga.1984). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment should be granted. *See Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir.1989) (citing *Celotex,* 477 U.S. at 324-325).

## BACKGROUND

On December 19, 2003, Plaintiff filed a six-count Complaint in state court, which was removed to this Court on March 16, 2004. The Complaint (Dkt. 2) alleges violations of 42 U.S.C. §1981 [hereinafter "§1981"], Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq.* [hereinafter "Title VII"], and the Florida Civil Rights Act of 1992, Ch. 760, Fla. Stat. [hereinafter "FCRA"]. Except as noted, the following factual allegations are taken from Plaintiff's Memorandum in Response to Defendant's Motion for Summary

Judgment (Dkt. 21) or Plaintiff's deposition (Dkt. 17 #4-12) [hereinafter Marcelin Depo. at
___].

Plaintiff is a black male of Haitian origin. In or about October, 1999, Defendant hired
Plaintiff as Lead Loss Prevention Officer ("LPO"), assigned to its mail order pharmacy
("MOP") facility in Clearwater, Florida. Plaintiff's claims relate to the period beginning in
the Fall of 2001, when Loss Prevention Representative ("LPR") Larry Wagner became
Plaintiff's direct supervisor, through the date of Plaintiff's termination in August, 2003.
During that period, Plaintiff alleges that Wagner subjected Plaintiff to constant criticism,
which he characterizes as "nit-picking."

Eckerd has a progressive disciplinary policy that generally escalates from a First
Verbal Discussion to a Second Verbal Discussion, First Written Discussion, Second Written
Discussion (Job in Jeopardy), and termination. While under Wagner's supervision, Plaintiff
was disciplined for numerous performance deficiencies.

Plaintiff met with HR Representative Dan Lillis and Director of Compliance Lori
Toenjes in September or October of 2001 to complain that Wagner's attempts to change
security policies and procedures at the MOP had placed Plaintiff in an awkward position with
respect to another manager who was resisting the changes and to complain of discipline he
had received for failure to comply with the new policies. (Marcelin Depo. at 345-46).
Plaintiff did not even entertain a subjective belief that Wagner was instituting such policy
changes or reporting Plaintiff for non-compliance with those policies on the basis of
Plaintiff's race or national origin. (*Id.*).

3

On April 26, 2002, Plaintiff received a Second Verbal Discussion addressing performance deficiencies dating back as early as October 7, 2001, including failure to meet deadlines, failure to carry out his supervisor's instructions, failure to follow applicable procedures, working unauthorized overtime, and inaccurate reports to management. (Marcelin Depo. at 134-136, 173 and Ex. 6). As a result of the Second Verbal, Plaintiff was placed on a performance improvement plan ("PIP"). By May 22, 2002, Wagner noted that Plaintiff had improved and was meeting expectations in all categories identified in the PIP.

On July 11, 2002, Plaintiff received a First Written Discussion, in which Wagner noted Plaintiff's need to improve in areas similar to those covered in the Second Verbal, including failure to follow directions and applicable procedures and working unauthorized overtime. (Marcelin Depo. at 182 and Ex. 7). As a result, Plaintiff was placed on another PIP.

After July 11, 2002, Plaintiff was transferred from the MOP facility to the Eckerd Support Center ("ESC"), Defendant's corporate headquarters located in another building directly opposite the MOP. The decision to transfer Plaintiff was made by Vice President of Loss Prevention, Larry Ford, with the concurrence of Wagner. (Dkt. 7 #1-2, Silcox Aff. ¶ 9).

Although the transfer resulted in Plaintiff's loss of lead responsibilities, because there was already a Lead LPO assigned to the ESC, Plaintiff's rate of pay and benefits remained the same. (Silcox Aff. ¶11). During the period from July 16, 2002, through August 21, 2002, Plaintiff was provided with training in the security policies and procedures at the ESC, particularly those related to manning the front lobby desk. (Marcelin Depo. at 218-220). Evaluation of Plaintiff's performance under his second PIP was postponed for an additional

thirty days, to September 9, 2002, in order to allow for Plaintiff's training (Marcelin Depo. Ex. 7).

Shortly after his transfer to the ESC, Plainitff met with HR Represenative Mike Morning and the Director of Loss Prevention to complain about unfair treatment by Wagner and to take issue with the performance issues that were the subject of Plaintiff's First Written Discussion. (Marcelin Depo. Ex. 7, Second Written Discussion ¶2.). Plaintiff does not recall raising the issue of racial discrimination in the meeting with Morning. (Marcelin Depo. at 408-409).

In August of 2002, Plaintiff complained about Wagner to HR Supervisor Kathy Silcox, concerning his transfer in general and the disciplinary counseling he had received in connection with his handling of an emergency call. Again, Plaintiff has no recollection of ever mentioning race or national origin discrimination to Silcox. (Marcelin Depo. at 411-412). Plaintiff's own handwritten notes regarding his August 22, 2002, meeting with Silcox do not reference any concerns regarding race or national origin discrimination or retaliation. (Marcelin Depo. Ex. 19). Silcox recalls that Marcelin complained that Wagner was unfairly finding fault with everything Plaintiff did but that Marcelin did not report any type of illegal discrimination or retaliation (Silcox Aff. ¶¶ 12-13).

On August 27, 2002, Plaintiff received a Second Written Discussion (Job in Jeopardy) for failing to answer an internal emergency call on August 14, 2002, and allowing it to roll over to another office, for mishandling a call reporting an accident in the cafeteria on August 15, 2002, and for mishandling another report of an emergency on August 22, 2002.

On August 27, 2002. Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission [hereinafter "EEOC"] and the Florida Commission on Human Relations [hereinafter "FCHR"], complaining that his July, 2002, transfer constituted discrimination and retaliation on the basis of race and national origin.  Defendant did not have notice of Plaintiff's EEOC Charge until after Plaintiff's termination on August 29, 2002.

On August 29, 2002, Plaintiff was discharged for failing, on August 28, 2002, to respond appropriately to an emergency call reporting that an employee appeared to be suffering a heart attack. The decision to terminate Plaintiff was made by Vice President for Loss Prevention Larry Ford. upon the recommendation of Wagner and with the approval of HR.  (Silcox Aff. ¶14).  Plaintiff admits that, at the time of his termination, he needed improvement in several areas of performance. (Marcelin Depo. at 217-247, 272, 292).

According to Plaintiff. he was informed that he was being terminated because he did not know what he was doing, because Wagner had lost confidence in Plaintiff's performance. because Plaintiff's trainers reported that they could not work with Plaintiff, and because of continued performance problems dating back to the time of Plaintiff's transfer.  (Marcelin Depo. at 441-442 and Ex. 12. ¶11).  Plaintiff alleges that these reasons were merely pretext for illegal discrimination.

In support of his allegations of pretext, Plaintiff alleges that Wagner's appraisals of Plaintiff's performance were false and that the discipline. transfer, and termination that resulted therefrom, were intended by Wagner to harass and discriminate against Plaintiff on the basis of his race and national origin and to retaliate against Plaintiff for his complaints

about Wagner. Plaintiff also alleges that Wagner made two derogatory remarks concerning Plaintiff's national origin and one derogatory remark about foreigners to Plaintiff and that Plaintiff received reports from other co-workers, but did not himself observe, that Wagner had made racially discriminatory remarks and comments regarding Plaintiff's accent. None of the remarks is alleged to have been made in connection with any employment decision affecting Plaintiff.

## DISCUSSION

Plaintiff has alleged claims for hostile work environment and discriminatory discharge on the basis of race in violation of §1981 (Count I) and Title VII and the FCRA (Count III), as well as on the basis of national origin in violation of Title VII and the FCRA (Count V). Plaintiff has alleged claims for retaliation on the basis of race in violation of §1981 (Count II) and Title VII and the FCRA (Count IV), as well as on the basis of national origin in violation of Title VII and the FCRA (Count VI). Because claims under §1981, Title VII, and the FCRA involve the same analysis and because the Plaintiff has adduced the same evidence in support of his claims for race discrimination and national origin discrimination (Marcelin Depo. at 6-7), the Court will address Plaintiff's arguments concerning wrongful discharge, hostile work environment, and retaliation using case law decided under all three statutes interchangeably. *See, e.g., Standard v. A.B.E.L Servs.* 161 F.3d 1318, 1330 (11th Cir. 1998); *Harper*, 139 F.3d 1385.

### *I. Plaintiff's Wrongful Discharge Claims*

In Title VII disparate treatment cases, where, as in the instant case, the plaintiff does not present direct or statistical evidence of employment discrimination, this Court applies the

three-step, burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. If the *prima facie* case requirement is satisfied, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. If the employer meets its burden of production, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the non-discriminatory reason offered by the employer was a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 801; *Burdine*, 450 U.S. at 256.

### A. Plaintiff's Prima Facie Case

To establish a *prima facie* case for discriminatory discharge, the Plaintiff must show that: 1) he is a member of a protected class under the statute; 2) he was qualified for the job; 3) he was treated differently than similarly situated employees outside of plaintiff's protected class; and 4) that sufficient evidence exists to infer a nexus or causal connection between the plaintiff's protected characteristic and the disparate treatment alleged. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279 (1976); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *McKeon v. Vaicaitis*, 825 F. Supp. 290, 293 (M.D. Fla. 1993). The Court finds that Plaintiff has failed to establish either the second or third elements of his *prima facie* case.

### 1. Qualified for the Job

For Plaintiff to satisfy the qualification element, he must come forth with evidence that he was doing his job well enough to negate the possibility that Defendant's actions in

8

terminating him were justified. *Patterson v. Wal-Mart Stores. Inc.*, 1999 WL 1427751 (M.D. Fla. 1999) (citing *Olivera v. Nestle P.R.. Inc.* 922 F.2d 43, 45 (1st Cir. 1990)). Plaintiff fails to satisfy the qualification element, if the evidence shows that Plaintiff's job performance clearly failed to meet Defendant's expectations. *Baker v. Sears. Roebuck & Co.*, 903 F.2d 1515. 1520 (11th Cir. 1990).

In the instant case, Plaintiff acknowledges that he had been subjected to repeated disciplinary action, including having been placed on a Second Written Discussion (Job in Jeopardy), prior to his termination and that, at the time of his termination, he had performance deficiencies in several areas. Accordingly, the Court finds that Plaintiff has not satisfied the second element of his *prima facie* case.

### 2. Similarly Situated

The *gravamen* of a discrimination case requires a plaintiff to show that a similarly situated employee outside of plaintiff's protected class was treated more favorably. *E.g., Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1313 (11th Cir. 1998), *superseded in part by* 151 F.3d 1321 (11th Cir. 1998). Where a plaintiff fails to identify similarly situated, non-minority employees who were treated more favorably. his case must fail because the burden was on him to establish his *prima facie* case. *Id.* at 1313. *See also Armindo v. Padlocker. Inc.*. 209 F.3d 1319. 1321 (11th Cir. 2000).

Here, not only does Plaintiff fail to identify in deposition, interrogatory, or affidavit evidence, any similarly situated employee outside his protected class who was treated more favorably, but he identifies at least one non-minority, non-Haitian LPO under Wagner's supervision who was treated at least as harshly as Plaintiff. (Marcelin Depo. at 65-67).

Defendant's Affidavits (Dkt. 17 #3, ¶16) established that several other LPOs under Wagner's supervision were disciplined for performance deficiencies comparable to Plaintiff's, including four white, non-Haitian LPOs who were subject to multiple counselings under Defendant's progressive discipline and discharged for failing to meet performance expectations. Accordingly, the Court finds that Plaintiff has not satisfied the third element of a *prima facie* case, a failure fatal to his claim under *Bessemer Carraway*.

### B.  Plaintiff's Ultimate Burden of Proof

Although the Court need not even reach the issue of pretext, *Jones v. Union Pacific R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002), the Court finds that Defendant has completely satisfied its burden of establishing a legitimate, non-discriminatory reason for its employment actions, namely, Plaintiff's record of ongoing performance deficiencies. The Court also finds that Plaintiff has failed to establish that Defendant's articulated reason is pretextual. Aside from the mere fact of his transfer and termination and his purely subjective belief that his repeated disciplinary counselings were unwarranted, Plaintiff alleges only that Wagner made three isolated discriminatory comments to Plaintiff that were unrelated to any employment decision affecting Plaintiff. Without deciding whether or not Wagner should be deemed the decisionmaker with respect to the complained-of employment actions, the alleged comments are insufficient as a matter of law to meet Plaintiff's burden to establish pretext. *E.g., Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999); *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002); *Scott v. Suncoast Beverage Sales Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002).

Therefore, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to meet either his initial or ultimate burden of proof and

grants Defendant's Motion for Summary Judgment on Plaintiff's claims for wrongful discharge under §1981, Title VII, and the FCRA.

## II. Plaintiff's Hostile Work Environment Claims

Although Plaintiff alleges in his Complaint that he was subjected to illegal harassment based upon his race and national origin, he does not brief the issue in his Memorandum in Response to Defendant's Motion for Summary Judgment (Dkt. 21). Even assuming, however, that the allegations made by Plaintiff in support of his hostile work environment claims in his pleadings and discovery responses are true, Plaintiff did not establish even a *prima facie* case of hostile work environment harassment.

In order to state a *prima facie* case of hostile work environment under Title VII, Plaintiff must prove that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*). To prevail on a hostile work environment claim, the Plaintiff must "demonstrate that the actions of the defendant altered the conditions of the workplace, creating an objectively abusive or hostile atmosphere." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995).

With respect to hostile conduct directed at him, Plaintiff alleges in his pleadings and discovery responses only that over the course of slightly less than a year, his supervisor: created tension between Plaintiff and other employees (including management employees) at

the MOP facility by asking Plaintiff to implement changes in employee bag checks and facility access; by virtue of those bag check and security policies, put Plaintiff in a strained relationship with the General Manager, who did not authorize or approve of such changes; undermined Plaintiff's authority after Plaintiff was transferred to the ESC facility by telling other LPO's that they were no longer to follow Plaintiff's direction; created a false paper trail regarding Plaintiff's performance; was loud and aggressive in one-on-one meetings with Plaintiff and generally attempted to intimidate Plaintiff; denigrated Plaintiff's abilities and subjected him to unfair discipline; and made discriminatory statements regarding Plaintiff's race and national origin.

Plaintiff admits in his deposition testimony, however, that he did not even entertain a subjective belief that Wagner was instituting policy changes relating to employee bag checks and other security measures or reprimanding Plaintiff for failing to implement those changes because of Plaintiff's race or national origin; that he lost his "lead" responsibilities in connection with disciplinary action against him that resulted in his transfer to the ESC facility; that at least some of the criticisms contained in his counseling records were warranted; and that his performance was deficient in several respects at the time of his termination.  In addition, when asked to identify any discriminatory remarks by Wagner, Plaintiff claimed personal knowledge of only two such statements allegedly directed at him and one alleged to have been made in connection with a third party's job application. Assuming for the sake of argument that Plaintiff's allegations of harassment are true and considering them in their entirety, they fail, nonetheless, to establish at least two elements of

a *prima facie* case, namely, that the complained of conduct was severe or pervasive or that it was based on race or national origin.

### A. Based on Race or National Origin

All that Plaintiff offers in support of his contention that the subject employment actions targeted his race or national origin are the three derogatory statements alleged to have been made by his supervisor, which, as a matter of law, fail to establish that the subject conduct was based on race or national origin. *See, e.g., Orenge v. Veneman,*. 218 F. Supp. 2d 758, 767-68 (D. Md. 2002) (five allegedly racist remarks by supervisor, including comment on the O.J. Simpson trial that whites would never trust blacks again, statement that blacks are trying to get a free ride, and some "you people" type comments, were insufficient to cause a reasonable person to believe that the complained-of actions were motivated by racial animus); *Dunlap v. Kansas Dep't of Health & Environment,* 211 F. Supp 2d. 1334, 1340-42 (D. Kansas 2002) (allegations that supervisor used foreign accent to mock unintelligent questions and pretended several times not to understand employee's accent did not, even if true, establish that employee's ancestry was being targeted by complained-of actions, which included disciplinary actions, denial of employee's requests for vacation, requests to transfer employee, and removal of some of employee's duties).

### B. Severe or Pervasive

In order to establish the fourth and dispositive element of a hostile environment harassment claim, Plaintiff must demonstrate that the actions of the Defendant altered the conditions of the workplace, creating an objectively and subjectively abusive and hostile atmosphere. *See Gupta v. Florida Bd. Of Regents,* 212 F.3d 571, 583 (11th Cir. 2000) (the

severe or pervasive requirement is the element that tests the mettle of most harassment claims). *See also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) ("When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' the statute is violated"). This standard is designed to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Moreover, "it must be clear that the hostile work environment was the result of discrimination based on a protected status—'[o]therwise, the federal courts will become a court of personnel appeals.'" *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

Nearly all of the conduct complained of by Plaintiff occurred in connection with informal and formal discipline administered by Plaintiff's direct supervisor. However, criticisms of a subordinate's work, even if frequent, unjustified, loud, or rude, amount to "ordinary tribulations of the workplace" that are insufficient as a matter of law to support a hostile environment claim. *See, e.g., Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004) (holding that allegations by employee of Indian nationality that her direct supervisor was hostile and abusive, focused on all the things she was doing wrong, subjected her to unjust criticisms, addressed her rudely, yelled at her, was constantly

14

hypercritical, and spoke to her as if she did not understand English very well were insufficient as a matter of law to constitute severe or pervasive conduct and, therefore, did not support hostile environment claim).   Moreover, insofar as Wagner's actions were undertaken as part of the employer's disciplinary process, they cannot, as a matter of law, constitute severe or pervasive conduct. *E.g., Orenge*, 218 F. Supp. 2d at 768-69 (employer's investigations into African-American employee's errors in reports, directions to comply with company policy, criticism of employee's performance and productivity, and discussions of transferring her to address performance issues were reasonable management decisions that did not constitute severe or pervasive conduct because they could not reasonably be perceived as hostile).

Other than allegations based upon Wagner's administration of discipline and supervision of Plaintiff's performance, Plaintiff alleges that over the course of slightly less than one year he was subjected to three discriminatory remarks by Wagner, only two of which were directed at Plaintiff.   Even assuming the remarks were actually made, they are not sufficiently severe or pervasive as a matter of law to make a sufficient showing under *Harris* that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult. *E.g., Elmahdi v. Marriott Hotel Servs.*, 339 F.3d 645, 653 (8th Cir. 2003) (black employee of Sudanese origin who alleged that, over an eight-month period, his supervisor called him "boy" and "black boy" on a few occasions, remarked that men from plaintiff's country like men, not women, and referred to Africans as having large penises did not present sufficient evidence to establish a hostile environment under *Harris*).   In the instant case, Plaintiff's proffered evidence, which consists of fewer, more ambiguous comments

15

over a longer period of time, falls even farther short of the test in *Harris*; rather, Plaintiff's alleged working conditions were, at most, marked by the sort of "isolated incidents" that do not rise to the level of "severe or pervasive" as a matter of law. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Because Plaintiff did not, as a matter of law, establish that the conduct he complains of was "based on" race or national origin or "severe or pervasive," the Court grant's Defendant's motion for summary judgment as to Plaintiff's hostile work environment claims under § 1981, Title VII, or the FCRA.

### III.  *Plaintiff's Retaliation Claims*

In order to prevail on a claim for retaliation under Title VII, Plaintiff must first present a *prima facie* case by establishing the following: 1) he engaged in activity protected by the statute; 2) he suffered an adverse employment action; and 3) that there is a causal connection between the protected activity and the adverse employment decision. *See Little v. United Tech.*, 103 F.3d 956 (11th Cir. 1997)); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).  In connection with establishing protected activity, Plaintiff must also show that he believed in good faith that Defendant's employment practices were unlawful and that his belief was objectively reasonable. *Little*, 103 F.3d at 960.  If Plaintiff can establish a *prima facie* case, Defendant must proffer a legitimate, non-retaliatory reason for the adverse employment action; however, Plaintiff bears the ultimate burden of proving by a preponderance of the evidence that Defendant's articulated reason is a pretext for prohibited retaliatory conduct.  *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

There is no dispute that Plaintiff's termination constitutes an adverse employment action.[1] The Court finds, however, that Plaintiff failed to establish either the first or third elements of his *prima facie* case.

### A. Protected Activity

The first element of Plaintiff's *prima facie* case of retaliation requires him to establish that he engaged in statutorily protected opposition conduct.[2] To do so, Plaintiff must show that he opposed conduct by the employer based upon an objectively reasonable belief that the employer was engaged in unlawful employment practices. *E.g., Harper*, 139 F.3d at 1388; *Brown*, 287 F. Supp. 2d at 1346-47. In addition, a plaintiff must show that the decisionmaker responsible for the adverse action was actually aware of the employee's protected opposition at the time the decisionmaker took the adverse action. *Brown*, 287 F. Supp. 2d at 1347. *See also Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). The Court will not presume that a decisionmaker was motivated to retaliate by something unknown to him or her. *Brungart*,

---

[1] Plaintiff's transfer, which involved the loss of his "lead man" title but did not otherwise affect his pay rate, status, or benefits, was not an adverse action. *See. e.g.. Menefree v. Montgomery County Bd. of Educ.* 2005 WL 1444211 (11th Cir. 2005) (slip opinion) (transfer absent reduction in pay, prestige. or responsibility is not an adverse employment action). *See also Walker v. Mueller Indus.*, 408 F.3d 328, 332-33 (7th Cir. 2005) (failure to assign employee to lead position not an adverse action, because position was not supervisory and did not provide higher compensation).

[2] Although Plaintiff's August 27, 2002, filing of a charge of discrimination with the EEOC could be protected "participation" conduct. it does not rise to that level in the instant case. There is no dispute that Defendant was not on notice of Plaintiff's EEOC charge until after the complained-of termination. Because the *gravamen* of a retaliation claim requires that an employer act with intent, *i.e.*, be aware of the employee's protected conduct before the adverse action is taken, Plaintiff cannot demonstrate, as a matter of law, that he engaged in protected participation conduct. *See, e.g., Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

231 F.3d at 799. Thus, in order to constitute protected opposition activity, a plaintiff must, at the very least, communicate her belief that illegal discrimination is occurring. *Webb v. R & B Holding Co.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998) ("It is not enough for the employee merely to complain about a certain policy or certain behavior . . . and rely on the employer to infer that discrimination has occurred.").

In the instant case, Plaintiff concedes that he did not complain expressly about racial or national origin discrimination. Courts analyzing the issue have consistently required that an employee's complaints must clearly put an employer on notice of a violation of the law. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 262 (1st Cir. 1999) (no protected activity where plaintiff complained of supervisor's treatment but never stated a belief that it violated Title VII or any other law); *Gleason v. Mesirow Fin.*, 118 F.3d 1134 (7th Cir. 1997) (granting summary judgment and finding that general complaints absent specific allegations of sexual harassment do not constitute protected activity); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694 (3d Cir. 1995) (letter to HR complaining about unfair treatment but not specifically complaining about discrimination is not protected activity). *See also Conrad v. Bd. of Johnson County Com'rs*, 237 F. Supp. 2d 1204, 1243-44 (D. Kan. 2002) (granting summary judgment and finding that where employee complained regarding employer's accusations of erratic behavior and fitness for duty evaluation but never complained of ADA violation or disability discrimination, she did not engage in protected opposition and cannot have held a reasonable belief that her complaints were protected by the ADA). Therefore, as a matter of law, Plaintiff's conduct does not rise to the level of statutorily protected opposition.

### B. Causal Connection

As a corollary, Plaintiff did not make even the minimum showing to establish the causation element of a *prima facie* claim of retaliation, *i.e.*, that "the employer was actually aware of the protected expression at the time it took adverse employment action." *Brown,* 287 F. Supp. 2d at 1347. *See also Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir. 1999); *Raney v. Vinson Guard Serv.,* 120 F.3d 1192, 1197 (11th Cir. 1997); *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993). A court will not presume that a decisionmaker was motivated to retaliate by something unknown to him or her. *Brungart,* 231 F.3d at 799. As noted above, Plaintiff's conduct cannot as a matter of law be deemed to have put his employer on notice that he was engaging in protected opposition conduct, and Defendant cannot be deemed to have been aware of any other type of protected activity by Plaintiff at the time they took the complained-of employment actions. Thus, there is no evidence of any causal link between the complained-of actions and Plaintiff's allegedly protected conduct, and, under the instant facts and circumstances, no inference of a causal link could ever arise. *E.g., Raney,* 120 F.3d at 1198-99 (plaintiff's failure to set forth significant probative evidence regarding knowledge of employee's opposition or participation conduct constitutes failure to carry burden of proof and entitles employer to summary judgment).

Even assuming that the three post-transfer complaints[3] about Wagner that Plaintiff subjectively believes constituted opposition to illegal discrimination or retaliation could be

---

[3] The pre-transfer complaints to Lillis and Toenjes do not satisfy the test for another element of a *prima facie* case of retaliation, namely, that Plaintiff have a subjectively and objectively

deemed to rise to the level of protected activity. Plaintiff, nonetheless, failed to establish the causation element of his *prima facie* case, because all three of those complaints were made after the complained-of transfer and after Plaintiff had already amassed numerous disciplinary counselings, reflected in his Second Verbal and First Written Discussions. Other than conclusorily alleging that the discipline itself was retaliatory,[4] Plaintiff offers only the temporal proximity between his complaints to Silcox in August of 2002 and his termination on August 29, 2002, to prove causation. Under the instant facts and circumstances, mere temporal proximity is not enough to raise a triable issue of fact on the causation element; rather, the significance of temporal proximity is negated where, as is the case here, the employer has concerns about the employee's performance that predate protected conduct. *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) (where continuing negative performance evaluations had commenced prior to any protected expression and were based on well-documented performance deficiencies, plaintiff cannot prove element of causation). *See also Pirie v. The Conley Group, Inc.*, 2004 WL 180259 (S.D. Iowa 2004) (where employee was claiming retaliation for filing charge of discrimination and alleging that employer had created a paper trail to support its reasons for termination, court held that subsequent discipline for deficiencies written up prior to protected activity could not reasonably be found to be caused by protected activity); *Smith v. Memorial Hosp. Corp.*, 302 F.3d 827, 834 (8th Cir. 2002) ("Evidence that the employer had

---

reasonable belief that the employer was engaged in unlawful employment practices. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311-12 (11th Cir. 2002); *Little*, 103 F.3d at 960.

[4] To find causation on the facts alleged by Plaintiff would require finding that the bulk of the alleged false paper trail was created prior to the date of Plaintiff's earliest alleged protected activity, which would be inherently unreasonable.

been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity."); *Smith v. Ashland. Inc.*, 250 F.3d 1167, 1174 (8th Cir. 2001) (where employee's deficiencies were well documented prior to protected activity, temporal proximity does not support inference of retaliation); *Padob v. Entex Info. Serv.*, 960 F. Supp. 806, 814 (S.D. N.Y. 1997) (where employee had already been informed that she had been placed on a PIP and that a decision as to her continued employment might be made, her termination although close in proximity to her protected activity did not, standing alone, establish the necessary causal connection between the protected activity and her discharge).

Because Plaintiff did not establish either that he engaged in statutorily protected conduct or that his termination was caused by any alleged protected conduct, he failed to meet his initial burden to prove a *prima facie* case, and Defendant is entitled to summary judgment on Plaintiff's claims for retaliation under § 1981. Title VII, and the FCRA.[5]

### *IV. Conclusion*

ORDERED that Defendant's motion for summary judgment as to Plaintiff's claims of discrimination. harassment, and retaliation under § 1981, Title VII, and the FCRA be GRANTED. The Clerk of Court is DIRECTED to enter judgment for the Defendant.

DONE and ORDERED at Tampa, Florida on this 10th day of APRIL 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES JUDGE

---

[5] Even if Plaintiff could establish a *prima facie* case of retaliation. he did not establish pretext for the reasons set forth *supra* p. 10.